IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Jeremy Shay Sweat, | ) | Civil Action No. 2:23-cv-06419-JDA-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Bright Heart, *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Jeremy Shay Sweat ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil action on December 11, 2023, alleging that Defendants Officer Pippins, Captain Johnson, and Associate Warden Brightharp[1] ("Defendants") failed to protect him from being "jumped and stabbed" by other inmates at Turbeville Correctional Institution ("TCI") on or about August 23, 2022. (Dkt. Nos. 1 at 5–7; 1-5 at 9–10.) Before the Court is Defendants' Motion for Summary Judgment (Dkt. No. 52). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration. For the reasons set forth herein, the undersigned recommends granting Defendants' motion.

## BACKGROUND

### A.    Factual Background

The instant case involves an incident that occurred in August 2022 while Plaintiff was housed at TCI. (Dkt. No. 1 at 5; Dkt. No. 1-2 at 1.) In the unverified Complaint,[2] Plaintiff alleges

---

[1] In their Answer, Defendants clarify that the proper names for Defendants "Bright Heart" and "Pippines" are Brightharp and Pippins. (Dkt. No. 29.) For clarity, the undersigned refers to these Defendants by their proper names.
[2] *See Goodman v. Diggs*, 986 F.3d 493, 495 (4th Cir. 2021) ("A complaint is verified if it is signed, sworn, and submitted under penalty of perjury.") (internal quotations omitted).

he was erroneously assigned to a dorm reserved for inmates with "disciplinary" issues, including "young gang members trying to make a name for [themselves]." (Dkt. No. 1-2 at 4.) Plaintiff claims that he has "a history of being threatened by gang members because of [his] charges." (*See* Dkt. No. 1-4 at 1, noting that Plaintiff is incarcerated for "a hate crime on two black females.") Plaintiff seems to suggest that he filed a grievance with Associate Warden Brightharp attempting to "get moved out of the . . . dorm," but was unsuccessful. (Dkt. No. 1-5 at 8; *see also* Dkt. No. 1-4 at 5, suggesting that Defendant Brightharp was aware that Plaintiff "had issues with gang members threatening [him] in the past.")

Two weeks later, Plaintiff's "roommate" (a "high ranking member" of "G. Folk Nation") apparently told him that if he "did not get out of his room, . . . he was going to have his boys jump[] [Plaintiff], and he was going to [steal] [Plaintiff's] property." (Dkt. No. 1-2 at 1–3; Dkt. No. 1 at 5–6.) Plaintiff alleges that he notified Officer Pippins that he needed to "get out of [his] cell" (Dkt. No. 1 at 5), and that his roommate likewise told Defendant Pippins "in a threatening voice that he better get [Plaintiff] moved out of the cell." (Dkt. No. 1-4 at 2.) Defendant Pippins eventually directed Plaintiff to speak with Captain Johnson, who then arranged to move Plaintiff into protective custody in a separate housing unit. (Dkt. No. 1-4 at 3; Dkt. No. 1-2 at 2.)

Defendant Johnson instructed Plaintiff to pack his belongings, which he did by placing his property in a laundry cart. (Dkt. No. 1-2 at 3.) Defendant Pippins apparently locked Plaintiff's cell door while he packed, but then reopened the door approximately five minutes later and left the wing. (Dkt. No. 1-4 at 3; Dkt. No. 1-5 at 5.) Neither Defendant Johnson nor Defendant Pippins "ma[de] sure that [Plaintiff] made it out of the . . . unit safely." (Dkt. No. 1-5 at 6.) Rather, Plaintiff's "cellmate and his gang were waiting on [him]" outside of the cell and physically attacked him by "stab[bing] [him] multiple times in [his] stomach and side." (Dkt. No. 1-5 at 5–6;

*see also* Dkt. No. 1-2 at 3–6, noting that these prisoners also stole Plaintiff's property.) Plaintiff was confined to a bed for two weeks due to his injuries. (Dkt. No. 1 at 6.) Based on the above, Plaintiff claims that Defendants Brightharp, Pippins, and Johnson violated his Eighth Amendment rights. (Dkt. No. 1 at 4; Dkt. No. 1-2 at 6.) Plaintiff seeks $50,000 in damages to cover the loss of his property and for his "pain and suffering." (Dkt. No. 1 at 6.)

### B.     Procedural Background

Plaintiff filed this action on December 11, 2023, and a scheduling order was first entered on August 19, 2024. (Dkt. No. 30.) Relevant here, on October 15, 2024, the Court issued an Order granting in part and denying in part Defendants' motion to compel responses from Plaintiff to their Interrogatories and Requests for Production. (Dkt. Nos. 41; 42.) The Court ordered Plaintiff to serve his responses to Defendants' Interrogatory Nos. 1–5, and 8–13 and all of Defendants' Requests for Production by November 15, 2024.[3] (Dkt. No. 42.)

On December 20, 2024, Defendants filed a second motion to compel and motion to deem admitted. (Dkt. No. 45.) In their motion, Defendants argued that because Plaintiff failed to serve Defendants with his answers to their discovery requests in violation of the Court's October 15, 2024 Order, the Court should dismiss Plaintiff's claims for his failure to cooperate in discovery, pursuant to Rule 37(b) of the Federal Rules of Civil Procedure. (*Id*. at 1–2.) Defendants further stated that they served Plaintiff with their First Set of Requests for Admissions on September 25, 2024, and the Court should deem those Requests admitted pursuant to Rule 36 of the Federal Rules of Civil Procedure because Plaintiff failed to respond to them. (*Id.*)

---

[3] The Court advised Plaintiff that he did not need to produce his medical records or any other documents/items that are equally accessible to Defendants, such as relevant incident reports, security footage, submitted grievances, and submitted request to staff member forms. (Dkt. No. 42.) The Court further advised Plaintiff that because the discovery requests are identical for each Defendant and they share counsel, Plaintiff only needed to provide one set of responses to the discovery requests. In other words, Plaintiff did not have to answer the same discovery request three separate times. (*Id*.)

The Court issued an Order on January 10, 2025, granting in part and denying in part Defendants' motion. (Dkt. No. 49.) More specifically, the Court allowed Plaintiff another opportunity to respond to Defendants' discovery requests as directed in the Court's October 15, 2024 Order. (*Id.* at 4–5.) The Court also allowed Plaintiff additional time to respond to Defendants' Requests, rather than treat the facts in Defendants' Requests as admitted. (*Id.*) The Court ordered Plaintiff to serve Defendants with his responses to the foregoing by January 31, 2025, and warned Plaintiff that failure to comply with the Order may result in the dismissal of his case, pursuant to Rule 37(b)(2)(A). (*Id.*)

On February 12, 2025, Defendants filed a Motion for Summary Judgment. (Dkt. No. 52.) That same day, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 53.) Plaintiff filed a response in opposition on February 27, 2025. (Dkt. No. 55.) Defendants filed a reply brief on March 6, 2025 (Dkt. No. 56), and Plaintiff filed separate sur-replies on March 24, 2025 (Dkt. No. 57) and March 28, 2025 (Dkt. No. 58). Defendants' motion has been fully briefed and is ready for review.

### C.     Evidentiary Record

As discussed above, Plaintiff alleges an Eighth Amendment failure to protect claim. (Dkt. No. 1.) Plaintiff's pleading is not verified, however, and therefore it does not constitute admissible evidence at summary judgment.[4] *See Thompson v. Hartsfield*, No. 5:17-CT-3262-FL, 2020 WL 5709247, at *4 (E.D.N.C. Sept. 24, 2020) ("Plaintiff's unverified complaint is not competent summary judgment evidence."); *Huff v. Outlaw*, No. 9:09-cv-00520-RBH, 2010 WL 1433470, at

---

[4] The Court previously notified Plaintiff that his response to Defendants' Motion for Summary Judgment must include verified evidence such as affidavits, declarations, or similar admissible evidence. (*See* Dkt. No. 53.)

4

*2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment.").

Below, the undersigned considers the evidence in the record; specifically: (1) Defendants' affidavit testimony; (2) affidavit testimony from TCI Warden, Kenneth Sharp; (3) affidavit testimony from Inmate Grievance Coordinator, Felicia McKie; (4) portions of Plaintiff's grievance history and medical records; and (5) administrative records relating to the incident at issue. The record establishes the following.

### 1.    SCDC Records Related to Incident

An incident report completed by a third-party SCDC employee on August 11, 2022, states:

> I, Captain Cynthia M. Ruth was called over the radio and informed that there was an offender at the back of the B-Building asking to speak to someone. I informed the staff to send the offender to the Cafeteria where I was assigned. Offender Sweat Jeremy SCDC# 326997 entered the cafeteria and told me that he and his cell mate were not getting along. I asked why and what was going on. According to Offender Sweat his cellmate found out that he (Sweat) is in prison for a hate crime against a black female. And because of that charge he had to go, move out. I then called Classification and spoke with Mrs. Ford. who did look up his charges. Offender Sweat was allowed to go back to Tawcaw B Wing and pack his own property. After, his property was collected and he waited a[t] the exit door to go to the holding cell. According to Offender Sweat, he was called to the truck stop by an offender he does not know and was jumped by several black offenders. According to offender Sweat's statement, the offenders stole his I/D card, T.V. and Hot Pot. During the inventory of the offenders property prior to going to RHU his I/D card was located in his personal belongings. Offender Sweat did sign the P.C. Packet. Offender Sweat recently signed himself out of the CBU (Appx 2 Weeks Ago) and is now inquiring about being allowed to reenter the program.

(Dkt. No. 52-1 at 20.) The reports states that the incident occurred at approximately 3:15pm, and it lists Defendant Pippins as one of the "employee(s)/witnesses involved." (*Id.*)

Plaintiff completed a "voluntary inmate witness statement" that same day, stating,

> Yesterday my roommate found out that I was locked up for a hate crime against a black female and he said that I had to move and today after I packed my stuff and was waiting on Pippins to come and let me out someone told me to let him hollow [sic] at me and I went in the truck stop where I was jumped. I think my roommate

was in on me getting jumped because I saw him talking to them before I packed my stuff. They stole my ID card, my TV, and Hot Pot. Capt. Told me to go back to the dorm and get ready to pack my stuff.

(*Id*. at 21.) The record shows Plaintiff was transferred to the restrictive housing unit ("RHU") at TCI for "protective concerns" following the incident. (*Id*. at 20; 22–24.)

Plaintiff's medical records state that he was "escorted to medical after being assaulted in dorm," and he was "ambulating without difficulty." (*Id*. at 18.) Plaintiff had lacerations on his scalp, right upper arm, an "abrasion" on his right lower leg, and a "superficial wound" on his "lower side going toward [his] back." (*Id*.) Plaintiff also had two "marble size knots" on the "center of [his] forehead." (*Id*.) Plaintiff was given a tetanus shot and a "starter pack of IBU." (*Id*.)

## 2.    Warden Sharp's Affidavit Testimony

In his affidavit, Warden Sharp avers that Plaintiff was housed at TCI from March 16, 2021 to September 12, 2022. (Dkt. No. 52-1 at 1.) Sharp avers that when the incident occurred on August 11, 2022, "there were no orders or directives requiring that inmate Sweat be separated from any other inmate." (*Id*. at 2.) Likewise, prior to that incident, Plaintiff did not "submit a request to staff member or grievance informing anyone at TCI of a threat to his safety." (*Id*.) Sharp avers that if such a threat to Plaintiff's safety had been communicated, Plaintiff "would have been moved to another dorm and a keep separate order would have been prepared and kept on file." (*Id*.) According to Sharp, "approximately two weeks prior to the alleged incident, inmate Sweat signed himself out of the character-based unit and was transferred to the Tawcaw dorm where this incident occurred." (*Id*.) Sharp avers that at the time of the incident, Plaintiff was "housed in the general population and was not in protective custody" because "there had been no threats to [his] safety." (*Id*.)

### 3.    Defendants' Affidavit Testimony

Although the Complaint refers to the "Captain" as "she" and "her," (*see generally* Dkt. No.
1), Defendant Captain Henry Johnson avers in his affidavit that there was "no female Captain
Johnson work[ing] at [TCI] at the time of this incident." (Dkt. No. 52-4 at 1.) Johnson does "not
recall the incident alleged" by Plaintiff and avers that he was "working the night shift . . . on the
date of the incident alleged by" Plaintiff. (*Id.*) Johnson confirms that he
was not on duty on that date" based on his review of "the shift roster from August 11, 2022." (*Id.*)
Johnson further avers that his "responsibilities as a Captain did not include inmate dorm
assignments. (*Id.* at 2.) According to Johnson, Plaintiff never informed him of any threats to his
safety and he was not otherwise aware of any risk of harm to Plaintiff prior to the incident at issue.
(*Id.*)

In his affidavit, Defendant William Brightharp, Jr. avers that he was the Associate Warden
of Programs at TCI when the incident occurred. (Dkt. No. 52-3 at 1.) As Associate Warden of
Programs, Brightharp "was in charge of the cafeteria, medical, prison industry, education, and
grounds services programs at Turbeville." (*Id.*) His position "did not include any responsibilities
related to inmate grievances or inmate dorm assignments." (*Id.*) Brightharp avers that after he
heard about the August 11, 2022 incident, he "called in Police Services to interview [Plaintiff],
and the interview was conducted on the same day as the incident." (*Id.* at 1–2.) According to
Brightharp, Plaintiff "was totally uncooperative" and appeared to be "highly affected by some type
of drug." (*Id.* at 2.) Brightharp avers that his "involvement in the incident" ended after "OIG
interviewed [Plaintiff] while he was in medical." (*Id.*) Brightharp avers that it is "extremely
unlikely" that Plaintiff "was jumped right in front of the officer's stations where the officer sits,"
because "this is the highest trafficked area in the dorm and is within view of the whole dorm." (*Id.*)

Brightharp avers that he "had never met or spoken" with Plaintiff prior to the incident, and he was not otherwise aware of any risk of harm to Plaintiff prior to the incident at issue. (*Id*.)

Finally, Defendant Officer Wordell Pippins avers that he was a correctional officer at TCI when the incident occurred. (Dkt. No. 52-2 at 1.) Pippins avers that his "responsibilities as an SCDC officer do not include dorm assignments and [he does] not have the authority to move inmates or change their custody level." (*Id*. at 2.) According to Pippins, Plaintiff never informed him of any threats to his safety and he was not otherwise aware of any risk of harm to Plaintiff prior to the incident at issue. (*Id*. at 1–2.)

### 4.     Inmate Grievance Coordinator McKie's Affidavit Testimony

In her affidavit, McKie avers that she "supervise[s] the Inmate Grievance System" as the Agency Inmate Grievance Coordinator/Branch Chief for the Inmate Grievance Branch. (Dkt. No. 52-5 at 1.) McKie avers that Plaintiff's records indicate that he "did not submit any grievances prior to the incident date of August 11, 2022, which allege any threats to his safety." (*Id.* at 4.) McKie further avers that Plaintiff submitted one related grievance after the incident occurred, and she has provided that grievance with her affidavit. (*Id.* at 3, 5.)

More specifically, Plaintiff submitted a Step 1 grievance on September 23, 2022, wherein he states he "would like to file charges on inmate Mr. Law and T. Wood" and references "the other inmates that jumped me, stabbed me, and stole my TV, coffee pot, and tablet." (*Id.* at 5.) Under "action requested," Plaintiff states, "charges filed and my property replaced." (*Id*.) The record shows the grievance was returned to Plaintiff on October 12, 2022, "because you list multiple issues on this grievance. Per agency policy, GA 01.12, Inmate Grievance System, you can only address one issue per grievance. You have 5 days to refile." (*Id*.)

In her affidavit, McKie avers that Plaintiff "was unable to file a Step Two Inmate Grievance Form related to complaints of being assaulted or that his property was stolen because he failed to comply with SCDC Policy GA 01.12 procedures." (*Id*. at 3.) She further avers that Plaintiff "failed to exhaust the remedies available to him under the SCDC grievance procedure as relates to his complaints regarding an alleged inmate assault." (*Id*. at 4)

## STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Sedar v. Reston Town Center Property, LLC*, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

In their Motion for Summary Judgment, Defendants argue: (1) Plaintiff's claims should be dismissed pursuant to Rule 37 of the Federal Rules of Civil Procedure; (2) Plaintiff's § 1983 claim fails as a matter of law; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff has failed to exhaust his administrative remedies.[5] (Dkt. No. 52.)

Plaintiff does not directly respond to these specific arguments in his short briefings. (*See* Dkt. Nos. 55; 57; 58.) Rather, Plaintiff asks the Court to instruct "the Warden to play" the security footage of the incident[6] and to provide the Court with "a list of names of the inmates that went to lockup over this incident out of the Tawcaw Unit." (Dkt. No. 58; *see also* Dkt. No. 57.) In a separate unverified briefing, Plaintiff states, "I told Pippins that I needed to get moved out of the cell with Low Low [sic] [and] even told Pippins you better move him out of this cell." (Dkt. No.

---

[5] In their Motion, Defendants also summarily state that because any claims against them in their official capacities are barred by the Eleventh Amendment, they "will assume Plaintiff's claims are asserted against them in their individual capacities and will address the claims accordingly." (Dkt. No. 52 at 5 n.3.) Plaintiff does not dispute that he only brings claims against Defendants in their individual capacities. Regardless, it is well settled that because SCDC is an arm of the State of South Carolina, any claims brought against SCDC employees in their official capacities are barred by the Eleventh Amendment. *See, e.g.*, *Rhoden v. S.C. Dep't of Corr.*, No. 4:17-cv-2537-HMH-TER, 2017 WL 9288217, at *3 (D.S.C. Oct. 4, 2017) (finding claims against prison warden in his official capacity should be dismissed because warden is entitled to Eleventh Amendment immunity), *adopted by*, 2017 WL 5494126 (D.S.C. Nov. 16, 2017), *amended*, 2017 WL 6032341 (D.S.C. Dec. 6, 2017); *Edwards v. Patell*, No. 4:06-cv-0748-HFF-TER, 2007 WL 2428548, at *8 (D.S.C. Aug. 21, 2007) (dismissing claims brought against defendant "employee of SCDC" in his official capacity); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . [and] is no different from a suit against the State itself.") (internal citation omitted); *Abebe v. S.C. Dep't of Corr.*, No. 0:09-cv-3111-MBS-PJ, 2010 WL 2991595, at *2 (D.S.C. July 2, 2010 ("As a state agency, SCDC is an arm of the State of South Carolina."), *adopted in part*, 2010 WL 3258595 (D.S.C. Aug. 16, 2010).
[6] There is no evidence that such footage exists, and Plaintiff offers no reason for failing to seek such footage earlier in this action.

55.) Plaintiff further disputes Warden Sharp's affidavit testimony that he did "not have any knowledge of me being threatened in the past by gang members." (*Id.*) According to Plaintiff, "all he has to do is go on his computer and pull it up." (*Id.*)

The undersigned considers Defendants' arguments for dismissal, below.

### A.        Dismissal under Fed. R. Civ. P. 37

In their Motion, Defendants state that Plaintiff has still failed to respond to their discovery requests as directed by the Court, and therefore Plaintiff's claims should be dismissed pursuant to Rule 37(b)(2)(A) for violation of the Court's January 10, 2025 Order. (Dkt. No. 52 at 5–6.) In the alternative, Defendants' ask that the Court deem their Requests admitted based on Plaintiff's continued failure to respond to them. (*Id*. at 6.)

Rule 37(b)(2), Fed. R. Civ. P., provides that if a party fails to obey an order to provide or permit discovery, the Court in which the action is pending may make such orders in regard to such failure as are just, including dismissing the action. To determine whether this action should be dismissed for Plaintiff's failure to comply with discovery requests and the Court's orders, the Court must consider (1) whether Plaintiff acted in bad faith; (2) the amount of prejudice Plaintiff's noncompliance caused Defendants; (3) the need for deterrence of the sort of noncompliance exhibited by Plaintiff; (4) the effectiveness of less drastic sanctions; and (5) whether Plaintiff has a history of deliberately proceeding in a dilatory fashion. *Cooper v. Spartanburg Sch. Dist. 7*, No. 715-cv-03072-JMC-JDA, 2017 WL 9289401, at *4 (D.S.C. Feb. 24, 2017) (citing *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc*., 872 F.2d 88, 92 (4th Cir. 1992); *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 920 (4th Cir. 1982)). Additionally, Fed. R. Civ. P. 36(a)(3) states that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and

signed by the party or its attorney. A shorter or longer time for responding may be . . . ordered by the court."

Upon careful review, the undersigned finds dismissal is not appropriate based on Plaintiff's failure to respond to Defendants' discovery requests. Defendants do not argue that they have been prejudiced by Plaintiff's conduct, nor do they otherwise articulate any of the factors relevant to the Court's consideration on this issue. *See Cooper*, 2017 WL 9289401, at *4. However, the Court expressly warned Plaintiff that pursuant to Rule 36(a)(3), his failure to timely respond to Defendants' Requests for Admission would result in the Requests deemed admitted. (*See* Dkt. No. 49 at 3.) Plaintiff has still inexplicably failed to respond to Defendants' Requests, despite the extension granted by the Court, and he offers no reason for this failure in his briefing. Based on this record, the undersigned finds it appropriate to deem the matters in Defendants' Requests for Admission (Dkt. No. 45-1) admitted. *See Little v. McDaniel*, No. 0:22-cv-4288-RMG-PJG, 2024 WL 4164706, at *2 (D.S.C. July 31, 2024) (finding certain matters deemed admitted based on *pro se* plaintiff's failure to respond to defendants' request for admissions and crediting those admissions to find summary judgment appropriate), *adopted by*, 2024 WL 3982832 (D.S.C. Aug. 29, 2024).

### B.    Eighth Amendment Failure to Protect Claim

Defendants argue that Plaintiff's Eighth Amendment claim fails as a matter of law. (Dkt. No. 52 at 6–11.) As discussed above, Plaintiff alleges that Defendants Brightharp, Pippins, and Johnson failed to protect him from the being assaulted by other inmates on August 11, 2022, thereby violating his constitutional rights under the Eighth Amendment. (Dkt. No. 1 at 4–5; 1-4 at 2–5; 1-5 at 8 .)

The Eighth Amendment requires prison officials to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Officials must take "reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Not every "injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Instead, the Supreme Court has outlined two requirements for an Eighth Amendment failure to protect claim. First, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In other words, the denial of the prisoner's constitutional rights must be "sufficiently serious." *Id.*; *see also Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014) ("a prisoner must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury") (internal quotation marks omitted). Second, the prison official must have a "sufficiently culpable state of mind," *id.*, which means the official either purposefully caused the harm or acted with "deliberate indifference," *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991).

"A prison official demonstrates deliberate indifference if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003)). To state an Eighth Amendment claim, the plaintiff must allege the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that he or she actually drew the inference. *Id.* "A showing of mere negligence will not suffice." *Danser*, 772 F.3d at 347 (citations omitted). "Thus, 'an official's failure to alleviate a significant risk that he should have perceived but did not' will not give rise to a claim under the Eighth Amendment." *Id.* (quoting *Farmer*, 511 U.S. at 838). "[T]he test is whether the guards know the plaintiff inmate faces a

13

serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown*, 612 F.3d at 723 (citations omitted).

As an initial matter, Plaintiff's deemed admission that Defendants lacked any knowledge of a threat against Plaintiff prior to the incident (*see* Dkt. No. 45-1 at 2) entitles Defendants to summary judgment on Plaintiff's Eighth Amendment failure to protect claim. Regardless, even when viewing the evidence in the light most favorable to Plaintiff, the undersigned finds this claim fails on its merits.

As noted above, the record indicates that two weeks after Plaintiff signed himself out of the character-based unit and was transferred to a new dorm, he asked third party Captain Cynthia M. Ruth for a reassignment because "he and his cellmate were not getting along" due to Plaintiff being "in prison for a hate crime against a black female." (Dkt. No. 52-1 at 20.) While it appears Defendant Pippins was involved in escorting Plaintiff to his new housing assignment (*see id.*), there is no evidence that Pippins knew Plaintiff was at risk of serious harm or that he otherwise deliberately failed to protect Plaintiff from the assault. Defendants Brightharp, Pippins, and Johnson have submitted affidavit testimony claiming they had no direct knowledge of any threat to Plaintiff prior to the August 11, 2022 incident and further claiming they did not otherwise have reason to suspect Plaintiff was at risk of serious harm. (*See* Dkt. Nos. 52-2; 52-3; 52-4.) To the extent the Complaint and Plaintiff's briefings suggest otherwise, such unverified allegations do not create a genuine issue of material fact that any Defendants knew of, yet disregarded, a substantial risk to Plaintiff's health and safety. *See*, *e.g.*, *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion"); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to

14

determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)); *Vaden v. Enochs*, No. 7:21-cv-00155, 2022 WL 520804, at *4 (W.D. Va. Feb. 22, 2022) ("[Plaintiff] cannot rest on unsupported statements in his brief to create a genuine dispute of fact.").

Indeed, Plaintiff's voluntary written statement, created the same day as the incident, does not indicate any wrongdoing by Defendants. (Dkt. No. 52-1 at 21.) Construed in the light most favorable to Plaintiff, the evidence suggests, at most, Pippin's negligence in escorting Plaintiff to his new dorm, which falls short of violating Plaintiff's Eighth Amendment rights. *See Young v. City of Mount Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001) (noting merely negligent behaviors do not meet the subjective mens rea requirement of deliberate indifference). Based on the foregoing, the undersigned recommends Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims.[7] *See also Young v. Dyer*, No. 7:23-cv-00206, 2025 WL 961702, at *6 (W.D. Va. Mar. 31, 2025) (granting summary judgment on *pro se* plaintiff's failure

---

[7] Citing the Complaint's allegation that "[t]he nurse refused to stitch [Plaintiff] up" (Dkt. No. 1 at 6), Defendants argue that Plaintiff has failed to establish an Eighth Amendment violation for inadequate medical treatment. (Dkt. No. 52 at 11–12.) The Complaint does not clearly allege any medical deliberate indifference claim, and Plaintiff does not respond to this argument. Accordingly, the undersigned considers this purported claim only briefly. As discussed above, the record shows that Plaintiff received prompt medical treatment after the August 11, 2022 incident. (*See* Dkt. No. 52-1 at 18–19.) Because there is no evidence that Defendants acted with deliberate indifference to Plaintiff's serious medical needs, the undersigned recommends any Eighth Amendment claim on this basis fails as a matter of law. *See Brown v. Shirah*, No. 4:21-cv-3513-TMC-TER, 2023 WL 2248967, at *5 (D.S.C. Jan. 27, 2023) ("To establish a claim of deliberate indifference against non-medical prison staff, a plaintiff must show that the non-medical personnel (1) were personally involved in the treatment or denial of treatment, (2) deliberately interfered with treatment, or (3) tacitly authorized or were indifferent to the medical provider's conduct."), *adopted by*, 2023 WL 2248320 (D.S.C. Feb. 27, 2023).

to protect claim because "no reasonable jury could find that [defendants] . . . knew of, yet disregarded, a substantial risk to [plaintiff's] health and safety").

Alternatively, because they are government officials, Defendants are entitled to qualified immunity from civil damages so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, Defendants are entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, because Plaintiff has not demonstrated that Defendants violated his constitutional rights, Defendants likewise are entitled to a finding of qualified immunity.

### C.     Exhaustion

Finally, Defendants argue that Plaintiff has failed to exhaust his administrative remedies with respect to his constitutional claims in this action. (Dkt. No. 52 at 12–13.) Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516 (2002).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v.*

16

*Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "Failure to exhaust is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." *Baxley v. Jividen*, 508 F. Supp. 3d 28, 46 (S.D.W. Va. 2020) (citation and internal quotation marks omitted). "However, if a defendant makes a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff." *Id.* (citation and internal quotation marks omitted).

As discussed above, Defendants have presented affidavit testimony indicating that Plaintiff failed to exhaust his administrative remedies because he failed to file a Step 2 grievance as to his complaints regarding the August 11, 2022 incident.[8] (Dkt. No. 52-5 at 1; *see also id.* at 5.) The record includes Plaintiff's Step 1 grievance complaining of this incident, which was returned to Plaintiff with leave to refile within 5 days based on his improper listing of "multiple issues" within one grievance. (*Id.* at 5.) Plaintiff does not allege that he refiled this Step 1 grievance to move forward with the grievance process, and the record does not otherwise support finding Plaintiff exhausted his administrative remedies. Accordingly, the undersigned recommends Defendants are also entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies. *See Johnson v. Ozmint*, 567 F. Supp. 2d 806, 815–16 (D.S.C. 2008) (granting summary

---

[8] While Defendants assert that their Requests "seek Plaintiff's admission" as to his "failure to exhaust his administrative remedies," the undersigned does not find this clearly stated in Defendants' Requests for Admission. (Dkt. No. 52 at 52 at 6 (citing Dkt. No. 45-1).) More specifically, Defendants appear to be referencing their Request that Plaintiff "[a]dmit that you did not complete the grievance procedure regarding your complaints of a threat to your safety." (Dkt. No. 45-1 at 2.) Plaintiff was not required to exhaust his complaints about a "threat to [his] safety"; rather this action concerns Defendants' alleged failure to appropriately address any purported threats to Plaintiff's safety and protect Plaintiff from the assault on August 11, 2022. Accordingly, the undersigned declines to find that Plaintiff's failure to exhaust his administrative remedies concerning the events in this action is conclusively established through his deemed admissions.

judgment on the plaintiff's § 1983 claims for failure to exhaust his administrative remedies with respect to those claims).

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 52) be GRANTED.

IT IS SO RECOMMENDED.

June 5, 2025
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).